UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELEN MOORE, et. al.

                Plaintiffs,                        C. A. No. 99-74438

        vs.                                         Hon. Nancy G. Edmunds

SCHOOL REFORM BOARD OF THE CITY OF
DETROIT, et. al.

                Defendants.
_____/

GEORGE B. WASHINGTON (P-26201)
SCHEFF & WASHINGTON, P.C.
One Kennedy Square – Ste. 2137
Detroit, MI  48226
313-963-1921

SHARON McPHAIL (P-26922)
1220 W. McNichols
Detroit, Michigan 48203
(313) 864-5923

Attorneys for Plaintiffs

GEORGE E. BUSHNELL  (P-11472)
RICHARD J. SERYAK (P-26152)
JEROME R. WATSON (P-27082)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Attorneys for Defendant School Board, Archer and Adamany

THOMAS R. WHEEKER  (P-22228)
Assistant Attorney General
Attorney for Defendant Engler
_____/

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Pursuant to the Federal Rules of Civil Procedure, the plaintiffs, by and through their attorneys, state as follows:

## INTRODUCTION

1. In this action, the plaintiffs challenge the defendants' enforcement of 1999 PA 10, as amended by 1999 PA 23, which stripped the right to vote for school board from the citizens of Detroit alone, in favor of an appointed  School Reform Board, with one member of that board, not elected or appointed by any person responsible to the electorate of the City of Detroit, holding a veto power over the most important decision to be made by that board.  The plaintiffs assert that in exercising power under that legislation violate the defendants are violating four separate constitutional and statutory provisions.  First, denying the vote to Detroit alone discriminates against its citizens in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and Article 1, Sections 2 and 17 of the 1963 Constitution of the State of Michigan.  Second, denying the right to vote to Detroit alone, violates Section 2 of the Voting Rights Act of 1965, as amended, 42 USC 1973 in that the result is to deny the right to vote to citizens on account of their race.  Third, denying the right to vote to Detroit alone violates Section 2 of the Voting Rights Act of 1965, as amended, 42 USC 1973, the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and 42 USC 1983 and 1985(3) in that the law was intended to deprive black people of the right to vote for school board in Detroit on account of their race.  Fourth, denying the right to vote to Detroit alone violates Article 4, Section 29 of the 1963 Constitution of the State of Michigan in that it is a local law enacted by the legislature without a two-thirds vote and without a referendum on that law in the City of Detroit.

2. The plaintiffs seek declaratory and injunctive relief restraining the defendants from

2

unlawfully exercising authority in violation of Detroit citizens' right to vote as well as such other

relief as will effectuate the purposes of the constitution and statutes of the United States and the

constitution of the State of Michigan.

## JURISDICTION

3. This Court has jurisdiction over the subject matter of this action under 28 USC 1331

and 1343 and under the pendent jurisdiction of this Court, as codified at 28 USC 1367.

4. With the exception of the defendant Engler, all defendants reside in Detroit and venue

is accordingly proper in the Eastern District of Michigan under 28 USC 1391.

5. This Court has authority to issue declaratory and injunctive relief under 28 USC 2201

and 2202.

## PARTIES

6. The plaintiff Helen Moore is a citizen and resident of Detroit and has fought for

quality education in Detroit for many years.

7. The plaintiff Agnes Aleobua is a citizen and resident of Detroit who graduated from

Cass Technical High School in June 1998 and is now a student at the University of Michigan in

Ann Arbor.

8. The plaintiff Stephen Conn is a citizen and resident of Detroit who teaches

mathematics at Cass Technical High School.

9. The plaintiff George Frazier is a citizen and resident of Detroit and is a parent of

children who are students in the Detroit public schools.

10. The plaintiff Mariatu Sesay is a citizen and resident of Detroit and is currently a

3

student at Finney High School in Detroit.

11. The Baptist Ministers' Conference is a voluntary, unincorporated association with its headquarters in Detroit. It represents 55 ministers of churches in Detroit, with the ministers and their congregations being citizens of Detroit.

12. The Black Slate, Inc. is a non-profit corporation with its headquarters in Detroit. The Black Slate has long been active in Detroit politics, including in opposing the takeover of the Detroit schools by an appointed board.

13. The Coalition to Defend Affirmative Action by Any Means Necessary is a voluntary unincorporated association with its headquarters in Detroit which has been active in defending affirmative action and opposing discrimination in education. The Coalition's members include citizens and residents of Detroit.

14. The Community Coalition for Empowerment, Inc. is a Michigan corporation of community activists which supports initiatives for economic and political empowerment of the citizens of Detroit, including opposing the takeover of the Detroit schools by an appointed board.

15. The Eastside Ministers United in Action is a voluntary unincorporated association of 20 ministers on the eastside of Detroit, which has long been active in opposing discrimination in the City, including in the takeover of the Detroit schools by an appointed board.

16. The Keep the Vote – No Takeover Coalition is a voluntary unincorporated association of Detroit citizens formed for the purpose of opposing the taking away of the right to vote and the imposition of an appointed school board on the citizens of Detroit.

17. The Million Man Alumni Association is a voluntary unincorporated association of citizens who attended the Million Man March in Washington, D.C., and has been active in opposing the takeover of the Detroit schools by an appointed board.

4

18. The Strike to Win Quality Education Caucus is a voluntary unincorporated association of Detroit teachers, parents, students and community activists which has fought for quality education in Detroit, including by opposing the stripping away of the right to vote and the imposition an appointed school board on the City.

19. United for Equality and Affirmative Action is a voluntary unincorporated association whose members include citizens of Detroit and which was formed for the purpose of opposing inequality in education, including by the imposition of appointed school boards on major cities, including Detroit.

20. The Westside Ministers Alliance is a voluntary unincorporated association of approximately 60 ministers of churches on the westside of Detroit which has fought discrimination in education, including by the imposition of the appointed school board on the City of Detroit.

21. The defendant School Reform Board of the City of Detroit was established as the governing board of the Detroit Public Schools by 1999 PA 10.

22. The defendant David Adamany was selected by the School Reform Board as the Chief Executive Officer of the Detroit Public Schools.

23. The defendant Dennis Archer is the Mayor of Detroit and appointed six of the seven members of the School Reform Board.

24. The defendant John Engler is the Governor of the State of Michigan and sponsored the legislation which established the School Reform Board and stole the right to vote from the citizens of Detroit.

5

FACTS

25. In Article 13 of the 1850 Constitution of the State of Michigan, the people mandated that public schools be maintained in each district of the State.

26. By Local Act Number 233 of the Laws of 1869, the Michigan legislature provided for an elected school board in the City of Detroit.

27. From 1869 until 1999, the people of the City of Detroit have continuously elected the school board which supervised the education of their children.

28. From at least 1976 forward, the people of every general school district in the State of Michigan have continuously elected local school boards.

29.   From at least 1981 forward, the people of every intermediate school district in the State of Michigan have continuously elected local school boards.

30.   As of January 1, 1999, each and every school board in the State of Michigan was elected.

31. Effective as of March 26, 1999, however, the Governor signed Act Number 10 of the Public Acts of 1999, which took immediate effect. A true copy of that Act is attached as Exhibit A.

32. Under Section 372(1) of 1999 PA 10, the mayor of any "qualifying school district" had to appoint six of the seven members of the school board within thirty days of March 26, 1999. The seventh member was the Superintendent of Public Instruction, who was selected by the State Board of Education, which is elected on a statewide basis under the terms of Article 8, Section 3 of the 1963 Constitution of the State of Michigan.

33. Under Section 371(c) of 1999 PA 10, a "qualifying school district" meant a school district with a pupil population of 100,000 or more, as provided in MCL 380.401-380.402.

6

34. Within the thirty day period provided for the appointment of the School Reform Board in Section 372(1) of 1999 PA 10, the only school district in the State of Michigan which was, or could conceivably be, covered by the Act was the City of Detroit. Indeed, 1999 PA 10 contained no provision which would allow any city other than Detroit to be brought under its terms.

35. Under Section 373(1) of 1999 PA 10, the powers and duties of the elected School Board of the City of Detroit were suspended.

36. Under Section 372(3) of 1999 PA 10, persons who had been elected by the citizens of Detroit as members of the School Board were disqualified from appointment to the School Reform Board.

37. Under Section 380.372(3) of 1999 PA 10, persons who were not citizens of Detroit were made eligible to be members of the School Reform Board and were in fact appointed to that Board by the Mayor. Under MCL 380.1101, the member of every other school board in the state is required to be a resident and citizen of the jurisdiction which the school board serves.

38. Under Section 374 of 1999 PA 10, the School Reform Board had to appoint, by unanimous vote, a Chief Executive Officer for the district, who would serve at the will of the Reform School Board.

39. Under Section 373(4) of 1999 PA 10, the Chief Executive Officer is empowered to exercise, without approval of the School Reform Board, all of the powers and duties otherwise vested in the elected school board of the City of Detroit.

40. In April and May, 1999, the School Reform Board attempted to appoint Dr. David Adamany as interim Chief Executive Officer, but, upon information and belief, was prevented from doing so because one Mayoral appointee, Marvis Cofield, refused to vote for Dr. Adamany.

41. Effective as of May 12, 1999, the Governor signed Act Number 23 of the Public Acts of 1999, which took immediate effect. A true copy of the sections of that Act affecting the governance of the Detroit public schools is attached as Exhibit B.

42. Under 1999 PA 23, Section 374 of 1999 PA 10 was amended to eliminate the veto of Mr. Cofield, who is black., as well as a potential veto by any other member appointed by the Mayor of Detroit.

43. Under Section 374 of 1999 PA 23, the veto by the Superintendent of Public Instruction alone, who is white, was maintained by requiring that the Superintendent of Public Instruction vote for anyone who was selected as Chief Executive Officer.

44. Upon information and belief, the Superintendent of Public Instruction does not now have, and has never had, a veto over the selection of the chief administrative officer of any other school district in the state.

45. Under the new legislation, the School Reform Board, with one dissent, selected Dr. David Adamany as interim Chief Executive Officer.

46. In January 2000, the School Reform Board attempted to select a permanent Chief Executive Officer. The Superintendent of Public Instruction vetoed that selection.

47. At no time was any referendum or other vote taken of the citizens of Detroit as to whether they wanted their elected board deposed and this appointed board , composed in part of non residents, substituted in its place

48. Under Section 375 of 1999 PA 10, the citizens of the City of Detroit, unlike the voters of any other district, are prevented from voting on this undemocratic scheme until the general election in November 2004.

49. Under 1999 PA 10 and 23, the Legislature has taken from the citizens of Detroit

8

alone the right to control the education of their children.

50. Under 1999 PA 10 and 23, the Legislature has imposed upon the citizens of Detroit alone taxation without representation in that the citizens of Detroit no longer have the right to control the tax revenues which they have repeatedly voted on their property in order to finance the education of their children.

51. Under 1999 PA 10 and 23, the Legislature has opened up the children of Detroit to educational "experiments" not subject to popular control and has opened up the funds of the school district to raids by suburban and other contractors eager to obtain tax revenues derived from the citizens without any say by the citizens in how those revenues will be spent.

## COUNT ONE

### DENYING DETROIT ALONE THE RIGHT TO VOTE VIOLATES THE EQUAL PROTECTION CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF MICHIGAN

52. The allegations of paragraphs one through forty-nine are repeated as if fully set forth here.

53. In denying to the citizens of Detroit alone the right to vote for school boards, 1999 PA 10 stripped the citizens of Detroit of their fundamental right to vote.

54. In denying to the citizens of Detroit alone the right to vote for their school board, 1999 PA 10 practices invidious discrimination against the citizens of Detroit, in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and of Article 1, Section 2 of the 1963 Constitution of the State of Michigan.

55. In providing that the Superintendent of Public Instruction shall have a veto power over the selection of the Chief Executive Officer of the schools in Detroit alone, and in providing

9

that Detroit alone may have a school board composed in its majority of non-residents of the City,

1999 PA 10 practices invidious discrimination against the citizens of Detroit, in violation of the

Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States

and of Article 1, Section 2 of the 1963 Constitution of the State of Michigan.

56.     The defendants have not asserted, and can not assert, either a compelling state

interest or a rational basis for this denial to the citizens of Detroit of their right to vote.

57.     By purporting to exercise authority under 1999 PA 10, the School Reform Board

and Chief Executive Officer David Adamany have violated, and are violating, the Fourteenth

Amendment to the Constitution of the United States, as well as the Civil Rights Act of 1866, 42

USC 1983, and the 1963 Constitution of the State of Michigan.

58.     Unless restrained by this Court, the continued exercise of this undemocratic and

dictatorial power will cause irreparable harm to the plaintiffs and to all the citizens of the City of

Detroit.

Wherefore, the plaintiffs ask that this Court enter declaratory and preliminary and

permanent injunctive relief:

(a) declaring 1999 PA 10 unconstitutional;

(b) restraining the defendants Reform School Board and Adamany from

exercising authority under this unconstitutional act;

(c) restraining the defendant Archer from appointing any further members of the

School Reform Board;

(d) restraining the defendant Engler from sponsoring any further legislation to

deny citizens of Detroit the right to vote for their school board;

(e) reinstating an elected school board in the City of Detroit; and

10

(f) granting attorneys' fees and costs and such further relief as is just and equitable.

## COUNT TWO

### DENYING ELIGIBILITY FOR APPOINTMENT TO THE REFORM SCHOOL BOARD TO THOSE PERSONS WHO HAD BEEN ELECTED BY THE CITIZENS OF DETROIT VIOLATES THE EQUAL PROTECTION CLAUSE

59.     The allegations of paragraphs one through fifty-eight are repeated as if fully set forth here.

60.     In denying eligibility for appointment to the Reform School Board solely to those persons who had been elected by the citizens of Detroit, 1999 PA 10 violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

61.     The State has not asserted, and can not assert, either a compelling state interest or a rational basis for this denial of eligibility to those persons who had been elected by the citizens of Detroit.

62.     By purporting to exercise authority under 1999 PA 10, the School Reform Board and Chief Executive Officer David Adamany have violated, and are violating, the Fourteenth Amendment to the Constitution of the United States, as well as the Civil Rights Act of 1866, 42 USC 1983.

63.     Unless restrained by this Court, the continued exercise of this undemocratic and dictatorial power will cause irreparable harm to the plaintiffs and to the citizens of the City of Detroit.

Wherefore, the plaintiffs ask that this Court enter declaratory and preliminary and

11

permanent injunctive relief:

(a) declaring 1999 PA 10 unconstitutional;

(b) restraining the defendants Reform School Board and Adamany from

exercising authority under this unconstitutional act;

(c) restraining the defendant Archer from appointing any further members of the

School Reform Board;

(d) restraining the defendant Engler from sponsoring any further legislation to

deny citizens of Detroit the right to vote for their school board;

(e) reinstating an elected school board in the City of Detroit; and

(f) granting attorneys' fees and costs and such further relief as is just and

equitable.

## COUNT THREE

## VIOLATION OF THE VOTING RIGHTS ACT

64.   The allegations of paragraphs one through sixty-three are repeated as if fully set

forth herein.

65.   The City of Detroit is now over 70 percent black and is, by far, the largest city in

Michigan with a black majority.

66.   In depriving the citizens of Detroit alone of the right to vote for school board,

1999 PA 10 results in the denial and abridgement of the right to vote on account of race, in

violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 USC 1973.

Wherefore, the plaintiffs ask that this Court enter declaratory and preliminary and

permanent injunctive relief:

(a) declaring 1999 PA 10 in violation of Section 2 of the Voting Rights Act;

(b) restraining the defendants Reform School Board and Adamany from exercising authority under this unlawful act;

(c) restraining the defendant Archer from appointing any further members of the School Reform Board;

(d) restraining the defendant Engler from sponsoring any further legislation to deny citizens of Detroit the right to vote for their school board;

(e) reinstating an elected school board in the City of Detroit; and

(f) granting attorneys' fees and costs and such further relief as is just and equitable.

## COUNT FOUR

### VIOLATION OF THE FOURTEENTH AND FIFTEENTH AMENDMENTS

68. The allegations of paragraphs one through sixty-seven are repeated as if fully set forth herein.

69. In denying the vote to Detroit alone, the Governor and Legislature intended to deprive citizens of their right to vote on account of their race.

70. In denying the right to vote to citizens of Detroit on account of their race, the defendants violated the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

71. In acting together to violate those rights, the defendants violated 42 USC 1983 and conspired together with each other and with others now unknown to violate voting rights, in violation of 42 USC 1985(3).

Wherefore, the plaintiffs ask that this Court enter declaratory and preliminary and

13

permanent injunctive relief:

      (a) declaring 1999 PA 10 in violation of the Fourteenth and Fifteenth Amendments to the

Constitution of the United States and of 42 USC 1983 and 1985(3);

      (b) restraining the defendants Reform School Board and Adamany from exercising

authority under this unlawful act;

      (c) restraining the defendant Archer from appointing any further members of the School

Reform Board;

      (d) restraining the defendant Engler from sponsoring any further legislation to deny

citizens of Detroit the right to vote for their school board;

      (e) reinstating an elected school board in the City of Detroit; and

      (f) granting attorneys' fees and costs and such further relief as is just and equitable.


## COUNT FIVE

BY ENACTING A LOCAL LAW WITHOUT A TWO-THIRDS VOTE
AND WITHOUT GIVING THE CITIZENS OF THE CITY OF DETROIT
A RIGHT TO VOTE BY REFERENDUM, 1999 PA 10 VIOLATES
ARTICLE 4, SECTION 29 OF THE MICHIGAN CONSTITUTION

      72. The allegations of paragraphs one through seventy-one are repeated as if fully set

forth here.

      73. Under Article 4, Section 29 of the 1963 Constitution of the State of Michigan, the

legislature may not pass any local or special act unless approved by a two-thirds vote of the

legislature and approved by a majority of the electors voting on it in a special election in the city

to which the act applies.

      74. 1999 PA 10 is a local act in that: (a) the population criteria in it is unreasonable and a

14

subterfuge for designating the City of Detroit alone; (b) the law, by being applicable only to districts which have over 100,000 pupils as a result of a pupil count before March 26, 1999, is designed to apply and can only apply to the City of Detroit; and (c) the law has no provision for including any city which attains the student count after April 25, 1999.

75. The legislature did not pass 1999 PA 10 by a two-thirds majority.

76. There has been no referendum on 1999 PA 10 in which the citizens of Detroit could vote on its application to their city.

77. 1999 PA 10 was enacted in violation of Article 4, Section 29 of the 1963 Constitution of the State of Michigan.

78. By purporting to exercise authority under 1999 PA 10, the School Reform Board and Chief Executive Officer David Adamany have violated, and are violating, Article 4, Section 29 of the 1963 Constitution of the State of Michigan.

79. Unless restrained by this Court, the continued exercise of this undemocratic and dictatorial power will cause irreparable harm to the plaintiffs and to the citizens of the City of Detroit.

Wherefore, the plaintiffs ask that this Court enter declaratory and preliminary and permanent injunctive relief:

(a) declaring 1999 PA 10 unconstitutional;

(b) restraining the defendants Reform School Board and Adamany from exercising authority under this unconstitutional act;

(c) restraining the defendant Archer from appointing any further members of the Reform School Board;

(d) restraining the defendant Engler from sponsoring any further legislation to deny

15

citizens of Detroit the right to vote for their school board;

(e) reinstating an elected school board in the City of Detroit; and

(f) granting attorneys' fees and costs and such further relief as is just and equitable.

## COUNT SIX

### VIOLATIONS OF THE DUE PROCESS CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF MICHIGAN

80. The allegations of paragraphs one through seventy-nine are repeated as if fully set forth here.

81. 1999 PA 10 denies to the citizens of Detroit their right to vote without due process of law.

82. In so denying citizens their right to vote, 1999 PA 10 violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and Article 1, Section 17 of the 1963 Constitution of the State of Michigan.

83. Unless restrained by this Court, the continued exercise of this undemocratic and dictatorial power will cause irreparable harm to the plaintiffs and to the citizens of the City of Detroit.

Wherefore, the plaintiffs ask that this Court enter declaratory and preliminary and permanent injunctive relief:

(a) declaring 1999 PA 10 unconstitutional;

(b) restraining the defendants School Reform Board and Adamany from exercising authority under this unconstitutional act;

(c) restraining the defendant Archer from appointing any further members of the School

Reform Board;

(d) restraining the defendant Engler from sponsoring any further legislation to deny

citizens of Detroit the right to vote for their school board;

(e) reinstating an elected school board in the City of Detroit; and

(f) granting attorneys' fees and costs and such further relief as is just and equitable.

## COUNT SEVEN

## VIOLATION OF THE FIRST AMENDMENT

84. The allegations of paragraphs one through eighty-three are repeated as if fully set

forth here.

85. In eliminating the veto on the selection of the Chief Executive Officer by Member

Marvis Cofield, while maintaining it for the Superintendent of Public Instruction, 1999 PA 23

retaliated against Cofield in whole or in part on account of his expression of his views, in

violation of the First Amendment and of 42 USC 1983.

86. Unless restrained by this Court, the continued exercise of this undemocratic and

dictatorial power will cause irreparable harm to the plaintiffs and to the citizens of the City of

Detroit.

Wherefore, the plaintiffs ask that this Court enter declaratory and preliminary and

permanent injunctive relief:

(a) declaring 1999 PA 23 unconstitutional;

(b) restraining the defendants School Reform Board and Adamany from exercising
authority under this unconstitutional act;

(c) granting attorneys' fees and costs and such further relief as is just and equitable.

17

By Plaintiffs' Attorneys,

SCHEFF & WASHINGTON, P.C.

BY:

GEORGE B. WASHINGTON (P-26201)
One Kennedy Square - Suite 2137
Detroit, Michigan  48226
(313) 963-1921

SHARON McPHAIL

BY:

SHARON McPHAIL (P-26922)
1220 W. McNichols
Detroit, Michigan 48203
(313) 864-5923

Dated: February 7, 2000

# CERTIFICATE OF SERVICE

I certify that on February 7, 2000, I served the attached First Amended Complaint on opposing counsel by mailing to them at their address of record.

George B. Washington (P-26201)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED