# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HELEN MOORE, AGNES, ALEOBUA, STEPHEN
CONN, GEORGE FRAZIER, MARIATU SESAY,
BAPTIST MINISTERS' CONFERENCE, BLACK
SLATE, INC., COALITION TO DEFEND
AFFIRMATIVE ACTION BY ANY MEANS
NECESSARY, COMMUNITY COALITION FOR
EMPOWERMENT, EASTSIDE MINISTERS UNITED
IN ACTION, KEEP THE VOTE-NO TAKEOVER
COALITION, MILLION MAN ALUMNI ASSOCIATION,
STRIKE TO WIN QUALITY EDUCATION CAUCUS,
UNITED FOR EQUALITY AND AFFIRMATIVE ACTION,
AND WESTSIDE MINISTERS' ALLIANCE,

Hon. Nancy G. Edmunds

Case No. 99-74438

      Plaintiffs,

vs.

SCHOOL REFORM BOARD OF THE CITY OF DETROIT,
DAVID ADAMANY, Chief Executive Officer of the
Detroit Public Schools, and DENNIS ARCHER, Mayor of
The City of Detroit,

      Defendants.

_____/

GEORGE B. WASHINGTON (P26201)
Scheff & Washington, P.C.
Attorney for Plaintiffs
One Kennedy Square – Suite 2137
Detroit MI  48226
(313) 963-1921

SHARON McPHAIL (P26922)
Attorney for Plaintiff
1220 W. McNichols
Detroit, MI  48203
(313) 864-5923

GEORGE E. BUSHNELL (P11472)
RICHARD J. SERYAK (P26152)
JEROME R. WATSON (P27082)
Miller, Canfield, Paddock and Stone, P.L.C.
Attorneys for Defendants
150 W. Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420

_____/

# PROOF OF SERVICE

STATE OF MICHIGAN)
                      )ss:
COUNTY OF WAYNE )

SHARON ANN BRUNETTE, being first duly sworn, deposes and says that she is an employee of Miller, Canfield, Paddock and Stone, P.L.C. and that on the 21st day of September, 2000 she caused to be served via a messenger a copy of **Defendants Adamany's, School Reform Board's and Archer's Response to Plaintiffs' Motion For Partial Summary Judgment** and **Proof of Service** upon the following parties hand-delivered to the addresses listed below:

GEORGE B. WASHINGTON
Scheff & Washington, P.C.
One Kennedy Square, Suite 2137
Detroit, MI 48226

SHARON McPHAIL
1220 W. McNichols
Detroit, MI 48203

*Sharon Ann Brunette*
        Sharon Ann Brunette

Subscribed and sworn to before
me this 21st day of September, 2000

*Moira P. Tobbel*
Notary Public, Wayne County, Michigan

My Commission Expires:  June 28, 2003

DELIB:2105772.1\022715-00017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELEN MOORE, et al.

    Plaintiffs,

vs.

SCHOOL REFORM BOARD OF THE CITY OF DETROIT,
DAVID ADAMANY, Chief Executive Officer of the
Detroit Public Schools, and DENNIS ARCHER, Mayor of
The City of Detroit,

    Defendants.

Hon. Nancy G. Edmunds

Case No. 99-74438

**Oral Argument Requested**

---

GEORGE B. WASHINGTON (P26201)
Scheff & Washington, P.C.
Attorney for Plaintiffs
One Kennedy Square – Suite 2137
Detroit MI  48226
(313) 963-1921

SHARON McPHAIL (P26922)
Attorney for Plaintiffs
1220 W. McNichols
Detroit, MI  48203
(313) 864-5923

GEORGE E. BUSHNELL (P11472)
RICHARD J. SERYAK (P26152)
JEROME R. WATSON (P27082)
JENNIFER A. WALKER (P58354)
Miller, Canfield, Paddock and Stone, P.L.C.
Attorneys for Defendants
150 W. Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420

U.S. DIST. COURT CLERK
EAST DIST. MICH
DETROIT

FILED

00 SEP 21  P4:20

---

**DEFENDANTS ADAMANY'S, SCHOOL REFORM BOARD'S AND ARCHER'S
RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

COUNTER-STATEMENT OF ISSUES PRESENTED ............................................................ ii

INDEX OF AUTHORITIES.................................................................................................. v

INTRODUCTION ................................................................................................................. 1

COUNTER STATEMENT OF FACTS ................................................................................. 2

ARGUMENT........................................................................................................................ 3

I.      SUMMARY JUDGMENT STANDARD...................................................................... 3

II.     PLAINTIFFS' CLAIMS RAISE A NONJUSTICIABLE POLITICAL QUESTION. ................. 4

III.    PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER ARTICLE 4, § 29 OF
        THE MICHIGAN CONSTITUTION. ........................................................................... 6

        A.      Because the Michigan Constitution Specifically Addresses the Issue of Education,
                the General "Local Act" Provision Does Not Apply to PA 10. ........................................... 6

                1.      Matters of Education Are Solely Within the Province of the Michigan
                        Legislature, and, Therefore, It Had the Authority to Enact PA 10. ....................... 6

                2.      Because the Michigan Constitution Specifically Addresses the Issue of
                        Education and Because PA 10 Involves an Issue of State-Wide Concern
                        the General "Local Act" Provision Does Not Apply to PA 10............................... 7

        B.      Even If Article 4, § 29 Applies, PA 10 Is a Constitutional General Act. ....................... 10

                1.      The Legislature clearly intended to make PA 10 open-ended. ............................ 10

                2.      PA 230 removes any question regarding the open-ended nature of PA 10. ........ 10

                3.      PA 10's population classification is rationally related to its purpose.................. 12

        C.      PA 10 Is Within the Legislature's Power and Does Not Violate Article VII, § 22 ........ 14

IV.     PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF THE VOTING RIGHTS
        ACT.......................................................................................................................... 15

        A.      Section 2 of the Voting Rights Act Does Not Apply to PA 10's Appointive
                Process. .................................................................................................................... 15

        B.      Even if the Voting Rights Act Did Apply, Plaintiffs' Claim Must Fail Because PA
                10 Does Not Affect Minorities' Fundamental Right to Vote. ....................................... 15

V.      PLAINTIFFS FIRST AMENDMENT CLAIM MUST FAIL....................................... 16

        A.      Plaintiffs Do Not Have Standing to Raise A First Amendment Claim on Behalf of
                Marvis Cofield or the Old School Board. .................................................................... 16

        B.      Even if Plaintiffs Had Standing to Challenge PA 10 or PA 23 on Behalf of
                Cofield or Members of the Old Board, Their First Amendment Claim Must Fail. ......... 18

                1.      Legislature Has the Authority to Regulate School Boards. ................................. 18

                2.      Legislature Had Legitimate Purpose for Enacting PA 10 and PA 23........ 19

CONCLUSION ................................................................................................................... 20

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

## COUNTER-STATEMENT OF ISSUES PRESENTED

I.    A.    The Michigan Constitution specifically addresses the issue of education in Article 8. The Michigan Supreme Court has held that where the Constitution addresses a specific issue, the specific constitutional provisions prevail over more general provisions, such as Article 4, Section 29 regarding "local acts." Thus, under the authority of the Michigan Constitution's education provisions, should Plaintiffs' claims under Article 4, Section 29 be dismissed because PA 10 is a permissible statute addressing the issue of education, to which Article 4, Section 29 does not apply?

**Defendants' Answer:**    Yes.
**Plaintiffs' Answer:**    No.

B.    The Michigan Supreme Court has held that where a statute addresses an issue of sate-wide concern, Article 4, Section 29 regarding "local acts" does not apply. Thus, under the authority of the Michigan Constitution's education provisions, should Plaintiffs' claims under Article 4, Section 29 be dismissed because PA 10 is a permissible statute addressing a matter of state-wide concern – the education of ten percent (10%) of Michigan's students?

**Defendants' Answer:**    Yes.
**Plaintiffs' Answer:**    No.

C.    If Article 4, Section 29 applies, should Plaintiffs' claims under Article 4, Section 29 be dismissed because PA 10 is constitutional where the education of ten percent (10 %)of the state's students is a legitimate state interest; the Legislature had a rational basis for including a population classification in the Act; the Legislature clearly intended that PA 10 be open-ended; and the Legislature recently amended PA 10, addressing any perceived deficiencies in the Act and making its original intent clear?

**Defendants' Answer:**    Yes.
**Plaintiffs' Answer:**    No.

II.    The Sixth Circuit has held that the Voting Rights Act applies only to elective, not appointive processes. Under PA 10, Reform Board members are appointed rather than elected. Should Plaintiffs' claims under the Voting Rights Act be dismissed because the Voting Rights Act does not apply to the appointive process of selecting Reform Board members?

**Defendants' Answer:**    Yes.
**Plaintiffs' Answer:**    No.

III.    A.    Plaintiffs allege that Defendants and/or the Legislature retaliated against Reform Board member Marvis Cofield, who is not a party to this lawsuit, by enacting 1999 PA 23 and removing his right to veto the Reform Board's appointment of a CEO. Plaintiffs bear the burden of establishing standing to assert this claim. Should Plaintiffs' First Amendment

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

claim fail for lack of standing where they cannot specify a causal connection between the enactment of PA 23 and any injury they have suffered?

**Defendants' Answer:**    Yes.
**Plaintiffs' Answer:**    No.

B.    Plaintiffs allege that Defendants and/or the Legislature retaliated against members of the Old Detroit School Board, who are not parties to this lawsuit, by enacting 1999 PA 10 and making them ineligible for appointment to the Reform Board.  Plaintiffs bear the burden of establishing standing to assert this claim.  Should Plaintiffs' apparent First Amendment claim fail for lack of standing where they cannot specify a causal connection between the enactment of PA 10 and any injury they have suffered?

**Defendants' Answer:**    Yes.
**Plaintiffs' Answer:**    No.

C.    Even if this Court finds that Plaintiffs have standing to assert First Amendment claims on behalf of Marvis Cofield or members of the Old Detroit School Board, should Plaintiffs' First Amendment claim be dismissed because the Legislature has the authority to regulate school boards and it had a legitimate purpose for enacting PA 10 and PA 23?

**Defendants' Answer:**    Yes.
**Plaintiffs' Answer:**    No.

## CONTROLLING AUTHORITY

Burton v. Lindsay, 184 Mich. 250, 151 N.W. 48 (1915)

Chisom v. Roemer, 501 U.S. 380, 111 S.Ct. 2354 (1991)

Dearborn v. Wayne Co. Bd. of Supervisors, 275 Mich. 151, 266. N.W. 394 (1936)

Energy Reserves v. Kansas Power & Light, 459 U.S. 400, (1983)

Hart v. County of Wayne, 396 Mich. 259, 240 N.W.2d 697 (1976)

MacDonald v. DeWaele, 263 Mich. 233, 248 N.W.2d 605 (1933)

MacQueen v. Port Huron City Comm'n, 194 Mich. 328, 160 N.W.2d 627 (1916)

Mixon v. Ohio, 193 F.3d 389 (6th Cir. 1999)

Sailors v. Board of Ed. Of the County of Kent, 387 U.S. 105, 87 S.Ct. 1549 (1967)

## INDEX OF AUTHORITIES

### CASES

Ace Tex Corp. v. City of Detroit, 185 Mich. App. 609, 463 N.W.2d 166 (1990)..............13

Advisory Op. on the Constitutionality of Act No. 346 of the Public Acts of
    1966, 380 Mich. 554, 158 N.W.2d 416 (1968)................................................................8

Airport Comm'y Schls. v. State Board of Ed., 17 Mich. App. 574, 170 N.W.2d
    193..................................................................................................................................13

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).....................................................3,4

Anthony v. Michigan, 35 F. Supp. 2d 989 (E.D. Mich. 1999) ...........................................18

Attorney Gen'l, ex rel. Eaves v. State Bridge Commission, 277 Mich. 373
    269 N.W. 388 (1936) .......................................................................................................8

Bendix Safety Restraints Group, Allied Signal, Inc. v. City of Troy, 215 Mich.
    App. 289, 544 N.W.2d 481 (1996) ..................................................................................4

Burton v. Lindsay, 184 Mich. 250, 151 N.W. 48 (1915).....................................................7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .................................................................3,18

Chemical Bank & Trust Co. v. Oakland County, 264 Mich. 673, 251 N.W.
    395 (1933).......................................................................................................................12

Child Welfare Society of Flint v. Kennedy Schl. Distr., 220 Mich. 290, 189
    N.W. 1002 (1922) ............................................................................................................7

Chisom v. Roemer, 501 U.S. 380, 111 S. Ct. 2354 (1991).................................................15

City of Allegan v. Consumers' Power Co., 71 F.2d 477 (6th Cir. 1934)...........................12

City of Ecorse v. Peoples Comm'y Hospital Auth'y, 336 Mich. 490, 58 N.W.2d
    159 (1953).......................................................................................................................8,9

City of Lansing v. Board of Canvassers, 380 Mich. 496, 157 N.W.2d 264
    (1968)..............................................................................................................................15

Common Council of Detroit v. Engel, 202 Mich. 536, 168 N.W. 462 (1918) ................8,9

Dearborn v. Wayne Co. Board of Supervisors, 275 Mich. 151, 266 N.W.
    394 (1936)........................................................................................................................13

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C

East Jackson Public Schls. v. State, 133 Mich. App. 132, 348 N.W.2d 303 (1984)................................................................................................................7

Energy Reserves v. Kansas Power & Light, 459 U.S. 400 (1983) .....................................20

Hansen-Snyder Co. v. General Motors Corp., 371 Mich. 480, 124 N.W.2d 286 (1963)..............................................................................................................12

Harsha v. City of Detroit, 261 Mich. 586, 246 N.W. 849 (1933)........................................15

Hart v. County of Wayne, 396 Mich. 259, 240 N.W.2d 697 (1976) ...............................8,9

Hearne v. Board of Education of City of Chicago, 185 F.3d 770 (7th Cir. 1999) ...............................................................................................................13

House Speaker v. Governor, 443 Mich. 560, 506 N.W.2d 190 (1993) ..............................5

Huron-Clinton Metropolitan Auth'y v. Boards of Supervisors of Five Counties, 300 Mich. 1, 1 N.W.2d 430 (1942)..................................................................8

Jones v. Grand Ledge Public Schls., 349 Mich. 1, 84 N.W.2d 327 (1957).........................6

Kalamazoo v. Titus, 208 Mich. 252, 175 N.W. 480 (1919) ..............................................15

Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996)................................3

Lanza v. Wagner, 229 N.Y.S.2d 380, 183 N.E.2d 670 (1962), appeal dismissed, 371 U.S. 74 (1962) .........................................................................19

Lucas v. Wayne Co. Board of Road Comm'rs, 131 Mich. App. 642, 348 N.W.2d 650 (1984) lv. den. 418 Mich. 945 (1984) ......................................13

Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130 (1992) .............................17

MacDonald v. DeWaele, 263 Mich. 233, 248 N.W.2d 605 (1933)....................................19

Malcolm-Smith v. Goff, No. CV-342589, 1999 Ohio App. LEXIS 4915 (Nov. 1, 1999) lv appeal granted 88 Ohio St. 3d 1447, 725 N.E.2d 286 (2000)..................16

Matsushita Electric Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).........................3

Mixon v. Ohio, 193 F.3d 389 (6th Cir. 1999)............................................................1,12,15

Mulloy v. Wayne Cty. Board of Supervisors, 246 Mich. 632, 225 N.W.2d 615 (1929)..........................................................................................................9,11

Ortiz v. City of Philadelphia Office of the City Comm'ners Voting Registration
  Division, 28 F.3d 306 (3rd Cir. 1994) ...........................................................................16

Pennsylvania Schl. District No. 7 v. Board of Ed. Of Lewis-Cass Intermed.
  Schl. District of Cass County, 14 Mich. App. 109, 165 N.W.2d 464 (Mich.
  App. 1968) ...........................................................................................................................7

People v. Morris, 450 Mich. 316, 537 N.W.2d 842 (1995) ...................................................5

Sailors v. Board of Ed. Of the County of Kent, 387 U.S. 105, 87 S. Ct. 1549
  (1967)....................................................................................................................................16

School Distr. No. One Fractional, Twp. of Ira v. School Distr. No. Two
  Fractional, Twp. of Chesterfield, 340 Mich. 678, 66 N.W.2d 72 (1954) .......................6

Storer v. Brown, 415 U.S. 730 (1974) .....................................................................................18

Stott v. Stott Realty Co., 288 Mich. 35, 284 N.W. 635 (1939)..........................................12

Sturgis v. County of Allegan, 343 Mich. 209, 72 N.W.2d 56 (1955)..................................7

Taylor v. Beckham, 178 U.S. 548 (1900) .................................................................................19

Thornburg v. Gingles, 478 U.S. 30, 106 S. Ct. 2752 (1986) ...............................................16

U.S. v. Newman, 889 F.2d 88 (6th Cir. 1989)..........................................................................5

W.A. Foote Mem'l Hospital, Inc. v. Kelley, 390 Mich. 193, 211 N.W.2d 649
  (1973).....................................................................................................................................8

Warden v. Pataki, 35 F. Supp. 2d 354 (S.D.N.Y. 1999).......................................................19

Wesley v. Collins, 791 F.2d 1255 (6th Cir. 1986).................................................................15

## STATUTES

M.C.L. §§ 380.5(6), 388.1606(7)................................................................................................10

M.C.L. § 380.11 ..........................................................................................................................14

M.C.L. § 380.401 ..................................................................................................................14, 19

M.C.L. § 380.401a .......................................................................................................................14

M.C.L. § 380.404b.......................................................................................................................14

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

M.C.L. § 380.411a ............................................................................................14

M.C.L. § 380.416 .............................................................................................14

M.C.L. § 380.417a ............................................................................................14

M.C.L. § 380.418a ............................................................................................14

M.C.L. § 380.422 .............................................................................................14

M.C.L. § 380.424 .............................................................................................14

M.C.L. § 380.431a ............................................................................................14

M.C.L. § 380.432 .............................................................................................14

M.C.L. § 380.433 .............................................................................................14

M.C.L. § 380.434 .............................................................................................14

M.C.L. § 380.472 .............................................................................................14

M.C.L. § 380.485 .............................................................................................14

M.C.L. § 380.1131 ............................................................................................14

Ohio Const., Art. VI, § 3 ...................................................................................16

1908 MICH. CONST. Art. 5, § 30 .......................................................................8

1963 MICH. CONST. Art. 4, § 29 .......................................................................8

1963 MICH. CONST. Art. 7, § 22 .....................................................................14

1963 MICH. CONST. Art. 8, §§ 1, 2 ............................................................3, 5, 6

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

## INTRODUCTION

Plaintiffs ask this Court to provide a forum to debate the policy decisions made by the Michigan Legislature regarding the reform of the Detroit Public Schools ("DPS"), the largest school district in the state of Michigan, because Plaintiffs would have made different decisions. This is a political question which the Legislature addressed by enacting 1999 Public Act 10. Plaintiffs lost the legislative battle and now attempt to enlist the assistance of this Court to reverse the decision of the Michigan Legislature. However, "[t]he remedy for a legislative decision that is unwise or impolitic is not judicial review, but, like the offending decision itself, political, involving a resort to the ballot box or more intensive lobbying activity." Bendix Safety Restraints Group, Allied Signal, Inc. v. City of Troy, *infra*. Thus, this Court should refrain from reviewing the policy decisions of the Michigan Legislature reflected in PA 10.

Even if this Court reached the merits of Plaintiffs' claims, each of their claims must fail. Plaintiffs seek summary judgment on the following counts in their Complaint: Local Acts (Count I); Voting Rights Act (Count II); and First Amendment (Counts II and VII). Plaintiffs' assertion that PA 10 violates the Voting Rights Act, ignores the Sixth Circuit's ruling in Mixon v. Ohio that the Voting Rights Act does not apply to appointive processes, like that found in PA 10. Moreover, despite Plaintiffs' long discussion of the history of school boards in Michigan, this case is not about the right to vote. *There is no fundamental right to vote for a school board.* This case is about the Legislature's decision to address the problems faced by DPS by providing for a reform board – legislation similar to that in other states addressing the problems faced by large, urban school districts. Plaintiffs have not and cannot cite one case overturning a legislative decision to institute such educational reform.

Plaintiffs' allegation that PA 10 violates the "local act" provision of Michigan's Constitution is similarly weak where the Constitution specifically addresses the subject of education and charges the Michigan Legislature with the duty of maintaining education in Michigan. Further, as originally drafted and, certainly as amended, PA 10 was clearly intended to be open-ended and, therefore, does not violate

the local act prohibition. Finally, Plaintiffs attempt to raise First Amendment claims on behalf of persons who are not even before this Court. Plaintiffs simply do not have standing to raise these claims because they have not suffered any direct injury.

## COUNTER STATEMENT OF FACTS

Defendants rely on the Statement of Facts set forth in their Brief in Support of Defendants' Motion for Summary Judgment. In addition, they state the following:

### The "Old" Detroit School Board Failed to Respond to the Urgent Needs of DPS.

Regardless of the reasons Plaintiffs cite for the Old Detroit School Board's failure to initiate meaningful reform in DPS – low funding, high security costs, poverty, etc – the Old Board simply was not getting the job done. Alleged reasonable excuses for not getting the job done are not the same as doing the job. For example, in 1998 when the Legislature addressed the issue of reform through PA 10, the Old Board had not yet utilized $1.5 billion in bonds, approved by the Detroit voters in 1994 for physical improvements to Detroit's schools. Indeed, Dr. Adamany concluded that the Old Board's use of, or failure to use, its bonding authority "reveals a record of poor planning, incompetence, and waste." 1999-2000 Report, pp. 22-26, Exhibit 1. In addition, the alleged "budget surplus" cited by Plaintiffs was largely a fiction. DPS did not have insurance or an insurance reserve for its aging buildings. *Id.*, pp. 18-22. Thus, fire or storm damage to just one building could have erased the alleged budget "surplus." *Id.*

### The Legislature Made a Policy Decision to Create a Reform Board

The Michigan Legislature debated the merits of the creation of a Reform Board for DPS and similarly situated school districts prior to enacting PA 10. In fact, Plaintiffs admit that they traveled to Lansing to participate in the hearings on PA 10. After hearing from both sides of the issue regarding the effectiveness of the reform legislation, the Legislature voted to facilitate reform in DPS by establishing an appointed Reform Board. In the end, over 80% of the State Senate and over 60% of the State House of Representatives voted in favor of PA 10. *See* Journal of the Senate, No. 17, March 2, 1999, pp. 249-

-2-

250, Exhibit 2. By enacting PA 10,[1] the Legislature acted within its constitutional mandate to encourage, maintain and support public education. MICH. CONST. Art. 8, §§ 1, 2.

The Michigan Legislature later enacted 2000 PA 230 in order to clarify its intent regarding PA 10 – that PA 10 was open-ended and would apply to other districts that met the population classification:

> The amendments made by this amendatory act . . . are intended to reaffirm the legislature's initial intent to apply those sections and part 5a and sections 449 and 471a of the revised school code . . . to any school district that was a qualifying school district under part 5a of the revised school code at the time of enactment of 1999 PA 10 or that may hereafter become a qualifying school district.

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996) (citing Celotex).

In order to avoid summary judgment, the opposing parties must come forward with sufficient admissible evidence to allow a reasonable fact-finder to find for them at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (court rejected plaintiff's theory of case and requested factual inferences dependent on plaintiff's theory, finding no plausible basis for alleged antitrust conspiracy). The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. Anderson, 477 U.S. 242. Thus, "a party opposing a properly supported motion for summary judgment may not rest on mere

---

[1] Three statutes are at issue in this lawsuit: 1999 PA 10 – the original reform legislation; 1999 PA 23 – legislation removing veto powers from some members of the Reform Board; and 2000 PA 230 – clarifying the original intent of PA 10.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256.

As set forth herein and in Defendants' Summary Judgment Briefs, on which Defendants rely, Plaintiffs have failed to come forward with sufficient admissible evidence to establish that they are entitled to judgment as a matter of law on the record before this Court or to allow a fact-finder to find for them at trial. Plaintiffs' claims, however, are appropriate for summary judgment, but in favor of Defendants, not Plaintiffs, because they are insufficient as a matter of law.

## II.    PLAINTIFFS' CLAIMS RAISE A NONJUSTICIABLE POLITICAL QUESTION.

Plaintiffs ask this Court to decide a question that the Michigan Legislature has already addressed through PA 10, PA 23 and PA 230: Which method of reform is best for the Detroit Public Schools? This is a fundamental question of public policy that is best addressed by the Legislature. To ask this Court to venture into the public policy arena raises significant separation of powers principles and violates the political question doctrine. "The remedy for a legislative decision that is unwise or impolitic is not judicial review, but, like the offending decision itself, political, involving a resort to the ballot box or more intensive lobbying activity." <u>Bendix Safety Restraints Group, Allied Signal, Inc. v. City of Troy</u>, 215 Mich. App. 289, 298-99, 544 N.W.2d 481 (1996).

Courts apply three factors to determine whether a nonjusticiable political question exists: "'(i) Does the issue involve resolution of questions committed by the text of the Constitution to a coordinate branch of Government? (ii) Would resolution of the question demand that a court move beyond areas of judicial expertise? (iii) Do prudential considerations [for maintaining respect between the three branches] counsel against judicial intervention?" <u>House Speaker v. Governor</u>, 443 Mich. 560, 574; 506 N.W.2d 190, 199 (1993) (citing <u>Goldwater v. Carter</u>, 444 U.S. 976, 978 (1978) (Powell, J., concurring); <u>U.S. v. Newman</u>, 889 F.2d 88, 96-97 (6th Cir. 1989).

-4-

In this case, the answer to each of these questions is an undeniable, Yes!, where: (1) The Michigan Constitution specifically charges the Legislature with the duty to maintain public education in this State. MICH. CONST. Art. 8, § 1; (2) Courts are not in the business of making policy decisions regarding education; and (3) Interference by this Court with the Legislature's decision to enact PA 10, PA 23 and PA 230 would negate the legislative process: a process that included committee review, public comment and debate both for and against the Acts. Thus, under the political question and separation of powers doctrines, this Court should refrain from reviewing the policy decisions of the Legislature reflected in PA 10, PA 23 and PA 230. People v. Morris, 450 Mich. 316, 336, 537 N.W.2d 842 (1995) ("The wisdom of the policy is a political question to be resolved in the political forum. To reach a contrary result would be simply to repudiate the legislative choice").

In effect, this Court is presented with stark alternatives, which underscore the unsuitability of a judicial resolution of the dispute. On the one hand, Plaintiffs essentially say to the Court: "Grant our requested relief or DPS students will suffer because the steps we would take toward reform are better." On the other hand, Defendants say to the Court: "Deny Plaintiffs' requested relief or the reform effort will stall and DPS students will suffer." The Michigan legislature has already juggled the competing interests and has endorsed Defendants' view. The wisdom of creating an appointed Reform Board to address DPS' problems raises political, not legal, questions beyond the province of the courts.

Moreover, if the Court were to address the controversy on the merits, on what standard or criteria would the Court, acting independently, decide which path of reform is best for DPS and its students? The very absence of standards by which a court could determine which method of reform is best for DPS underscores the non-justiciability of Plaintiffs' claims.

-5-

III.   **PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER ARTICLE 4, § 29 OF THE MICHIGAN CONSTITUTION.**

    A.   **Because the Michigan Constitution Specifically Addresses the Issue of Education, the General "Local Act" Provision Does Not Apply to PA 10.**

        1.   **Matters of Education Are Solely Within the Province of the Michigan Legislature, and, Therefore, It Had the Authority to Enact PA 10.**

Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall be forever encouraged.

MICH. CONST. Art. 8, § 1.  In addition to encouraging schools and education, the Michigan Constitution requires the Legislature to "maintain and support" public schools in Michigan.  Michigan law clearly mandates that the power to make public policy determinations about the state's educational system is within the exclusive province of the Michigan Legislature.  *See, e.g.,* School Distr. No. One Fractional, Twp. of Ira v. School Distr. No. Two Fractional, Twp. of Chesterfield, 340 Mich. 678, 689, 66 N.W.2d 72 (1954) ("It is axiomatic that, under the laws of this State, school matters are subject to the control of the legislature and are matters of State concern").

The Michigan Supreme Court has long recognized that education is a state, not a local, matter:

> Fundamentally, provision for and control of our public school system is a state matter, delegated and lodged in the state Legislature by the Constitution in a *separate article entirely distinct from that relating to local government. The general policy of the state has been to retain control of its school system, to be administered throughout the state under state laws by local state agencies* organized with plenary powers independent of the local government with which, by location and geographical boundaries, they are necessarily closely associated and to a greater or lesser extent authorized to cooperate. *'Education is not part of the local self-government inherent in the township or municipality except so far as the Legislature may choose to make it such.'*

Jones v. Grand Ledge Public Schls., 349 Mich. 1, 5, 84 N.W.2d 327 (1957) (emphasis added) (*quoting* MacQueen v. Port Huron City Comm'n, 194 Mich. 328, 160 N.W.2d 627, 629 (1916)).  In fact, the Michigan Supreme Court has stated that "the Legislature has <u>entire</u> <u>control</u> over the schools of the state, subject only to the provisions of the Constitution relating [to schools]." Sturgis v. County of Allegan,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

343 Mich. 209, 72 N.W.2d 56 (1955); *see also* Child Welfare Society of Flint v. Kennedy Schl. Distr., 220 Mich. 290, 189 N.W. 1002, 1004 (1922) (same).

In addition, it is well-established that public school districts are state agencies subject to control by the Legislature. Burton v. Lindsay, 184 Mich. 250, 256, 151 N.W. 48 (1915); East Jackson Public Schls. v. State, 133 Mich. App. 132, 139; 348 N.W.2d 303 (1984) (school districts are creations of the state and "have no existence, no functions, no rights and no powers" except as provided by the state). Most importantly, "the manner of selection of school officials rests entirely within the discretion of the legislature." Pennsylvania Schl. Dist. No. 7 v. Board of Ed. Of Lewis-Cass Intermed. Schl. Dist. of Cass County, 14 Mich. App. 109, 125; 165 N.W.2d 464 (Mich. App. 1968) (court upheld constitutionality of school district reorganization statute). Thus, "'[s]ubject to constitutional restrictions, the state may provide any method for the selection of its agents it may see fit, and *the methods employed need not be alike in all instances*.'" Penn. Schl. Dist. at 125 (*quoting* Minsinger v. Rau, 236 Pa. 327, 331, 84 A. 902 (1912)). Plaintiffs, therefore cannot establish that the Legislature acted beyond its authority in removing the Old Board and providing for the appointment of the Reform Board.

> **2.** **Because the Michigan Constitution Specifically Addresses the Issue of Education and Because PA 10 Involves an Issue of State-Wide Concern the General "Local Act" Provision Does Not Apply to PA 10.**

The Michigan Supreme Court has held that where the Michigan Constitution addresses a specific subject, the specific provisions of the Constitution prevail over general provisions:

> [I]f there is a conflict between a general and a special provision in a constitution, the special provision must prevail in respect of its subject matter, since it will be regarded as a limitation on the general grant, but the general provision will be left to control in cases where the special provision does not apply.

Hart v. County of Wayne, 396 Mich. 259, 273 n.7, 240 N.W.2d 697 (1976) (citations omitted). Thus, the Hart court held that the local acts provision of the Constitution did not apply to Recorder's Court legislation because the Michigan Constitution specifically addressed court systems:

-7-

MILLER CANFIELD, PADDOCK AND STONE, P.L.C.

Because the 1908 Constitution gave the Legislature the right, by general act, to establish courts (art. 7, s 1), the intent of the 1908 Constitution was that the Legislature should be able to establish and modify recorder's court without a local act referendum. Article 7, s 1 concerns a specific subject, the court system, while art. 5, s 30[2] concerns a general subject, local acts. Therefore, art. 7, s 1 prevails when dealing with the state judicial system. Legislative revisions of recorder's court are general acts. _Id._ at 273-4.

Furthermore, in reaching its decision and rejecting the reasoning in Common Council of Detroit v. Engel, 202 Mich. 536, 168 N.W. 462 (1918) (statute involving education, a topic specifically addressed under Constitution, subject to special acts provision) the Hart court, looked to cases where the courts addressed matters of state-wide concern, including: City of Ecorse v. Peoples Comm'y Hosp. Auth'y, 336 Mich. 490, 58 N.W.2d 159 (1953) (health-related statute matter of state-wide concern); W.A. Foote Mem'l Hosp., Inc. v. Kelley, 390 Mich. 193, 211 N.W.2d 649 (1973) (same); Huron-Clinton Metropolitan Auth'y v. Boards of Supervisors of Five Counties, 300 Mich. 1, 1 N.W.2d 430 (1942); Attorney Gen'l, ex rel. Eaves v. State Bridge Comm'n, 277 Mich. 373 269 N.W. 388 (1936).

In City of Ecorse, Plaintiffs questioned the constitutionality of a statute authorizing the creation of a local hospital authority. The court found:

> Undeniably, health is a matter of State concern. In safeguarding the public health, the legislature is granted a large area of discretion as to the measures used, it being no longer questioned that the State may interfere directly or indirectly by any of its agencies whenever the public interest demands it.

336 Mich. at 501 (citations omitted); _see also_ W.A. Foote Mem'l Hosp., _supra_; Advisory Op. on the Constitutionality of Act No. 346 of the Public Acts of 1966, 380 Mich. 554, 158 N.W.2d 416 (1968) (creation of state agency to promote construction of housing was proper governmental function). The court held that local rights were not affected by the creation of a state agency, a joint hospital authority:

> We have here a matter of health, which is a question of state-wide concern and in which the legislature has a large area of discretion. The defendant authority is a state agency . . . The legislation in question, not being local in nature, does not require the vote of the local electors for its approval under article 5, § 30, Const. 1908. Ecorse, 336 Mich. at 502-03.

---

[2] 1908 CONST. Art. 5, § 30 is the predecessor to 1963 CONST. Art. 4, § 29.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Similar to the analyses in Hart and Ecorse, education is a matter of state-wide concern,[3] which is specifically addressed in the Constitution and in which the Legislature has a great deal of discretion. Defendant Reform Board is a state agency, as was the Old Board. Each exists only to the extent the Legislature provides for its existence. In addition, Engel can be distinguished from the present action on its facts. First, the act in Engel dealt not with the quality of education or improvement of education for Detroit's students, but with bonds for Detroit Schools. School bonds for a particular city do not have the same state-wide relevance as improving the quality of education for students in Michigan's largest school district. Second, the act in Engel specifically referenced Detroit and was not based on a population classification that had a rational relationship to the act's purpose.

In addition, contrary to Plaintiffs' assertion, Hart did not "reaffirm" Engel, it merely restated the court's holding in Engel and then proceeded to discuss, analyze and follow, cases *contrary* to Engel:

> Engel is more on 'point' in declaring that a subject of general legislation is not exempted from the local act referendum requirement where the challenged statute pertains to a particular location. *However,* several cases have held the local act designation is *inappropriate even in those circumstances.*

Engel, at 266-267 (discussing State Bridge Commission, *supra*; City of Ecorse, *supra*; W.A. Foote, *supra*; Huron-Clinton Metropolitan Auth'y, *supra*) (emphasis added). The Engel court concluded:

> Recorder's court is a state court performing a state function, not a local function. Funding of the state judicial system is a legislative function. . . . Because recorder's court is a state function, the Legislature has authority to determine its funding.

Engel, 396 Mich. at 272. Likewise, education, generally, and the creation and regulation of school boards, specifically, are state functions and the Legislature has the authority to create, dismantle and change the responsibilities of school boards within this State. *See* pp. 18-19, *infra*.

Plaintiffs, therefore, cannot establish a claim under Art. 4, § 29 because this provision of the Michigan Constitution simply does not apply to PA 10.

---

[3] Because PA 10 involves an important matter of state-wide concern – the education of ten percent (10%) of Michigan's students – the facts before this Court are distinguishable from those in Mulloy v. Wayne Cty. Bd. of Supervisors, 246 Mich. 632, 225 N.W.2d 615 (1929).

-9-

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

**B.**   **Even If Article 4, § 29 Applies, PA 10 Is a Constitutional General Act.**

**1.**   **The Legislature clearly intended to make PA 10 open-ended.**

It is clear that the Legislature intended to make PA 10 open-ended so that it would apply to other districts when they reached student population levels of first class school districts. First, the term "most recent pupil membership count day" in PA 10 is not modified by limiting language such as "as of the date of this act." The court should not read any such language into the population classification. By its express terms, the population classification is open-ended. To determine whether a school district is a single first class school district at any given point in time (present or future), one need only determine the level of student enrollment as of the latest pupil membership count day.[4]

Plaintiffs' argument that PA 10 is a "local act" because it refers to "the mayor," and provides a window of time for the mayor to act, conflicts with the open-ended nature of the population classification discussed above. The 30-day period for the mayor to act was clearly intended to effect reform without further delay, not to create a closed class of school districts subject to the Act.[5]

**2.**   **PA 230 removes any question regarding the open-ended nature of PA 10.**

Even if this Court had any remaining questions regarding the open-ended nature of PA 10, the Legislature clarified its intention regarding the open-ended nature of PA 10 with the enactment of Public Act 230 of 2000, effective as of June 27, 2000, thereby removing the principal reasons upon which Plaintiffs rely for the alleged unconstitutionality of PA 10. Section 380.372(1) now reads:

> (1) Not later than April 25, 1999 or, if a qualifying school district becomes a school
> district of the first class after April 25, 1999, <u>not later than 30 days after the date the</u>

---

[4] The term "pupil membership count day" is a defined term in the Revised School Code. M.C.L. §§ 380.5(6), 388.1606(7). For most school districts, there is one pupil membership count day every year, "the fourth Friday in September each school year." M.C.L. 388.1606(7)(a). The phrase "most recent pupil membership count day" appears in several other places in the Revised School Code and is clearly intended to be open-ended.

[5] Obviously, the Legislature well knew that, at the time PA 10 was enacted, it would only apply to Detroit. This fact does not prevent the Act from being open-ended, however, as numerous statutes, including the whole section of the Revised School Code that pertains to first class school districts, only apply to Detroit at the present time.

-10-

MILLER, CANFIELD, PADDOCK AND STONE P.L.C.

<u>qualifying school district becomes a school district of the first class, the mayor [which is
defined to include the chief executive officer of the largest municipality in the qualifying
school district]</u> shall appoint a school reform board for a qualifying school district.

Corresponding changes throughout PA 230 further demonstrate that the provisions of Sections
380.371 through 380.376 apply to any school district in Michigan that is or may become a qualifying
school district.  Thus, with the enactment of PA 230, there can be no remaining question that the
Legislature intended PA 10 to apply to all qualifying school districts.  Under these facts, the present case
is distinguishable from <u>Mulloy v. Wayne Cty. Bd. of Supervisors</u>, 246 Mich. 632, 225 N.W.2d 615
(1929), because the Legislature took steps to ensure that its original intent was clear – PA 10 is open-
ended.  In <u>Mulloy</u> the Legislature made no attempt to clarify whether it intended the statute creating a
civil service commission for Wayne County to apply to any other qualifying county.

Contrary to Plaintiffs' assertions, the Legislature by enacting PA 230 explicitly restated its
original intent – that PA 10 was <u>not</u> intended to apply only to one district:

> The amendments made by this amendatory act . . . **are intended to reaffirm the
> legislature's initial intent** to apply those sections and part 5a and sections 449 and 471a
> of the revised school code . . . **to any school district that was a qualifying school
> district under part 5a of the revised school code at the time of enactment of 1999 PA
> 10 or that may hereafter become a qualifying school district.**

Plaintiffs completely ignore Michigan law allowing the Legislature to make procedural or
remedial amendments to statutes, and attempt to divert the Court's attention from the legal effect of PA
230 by raising questions about the process behind the enactment of PA 230.  Plaintiffs are grasping at
straws in an attempt to avoid the obvious:  PA 10 is not an unconstitutional local act.  Although PA 230
was enacted after this action was filed, this Court should evaluate Plaintiffs' claims in light of the
amended legislation, because, as of June 27, 2000, it is the law of this State.  Courts in Michigan have
held that statutes or amendments which are procedural or remedial in nature and "which do not create
new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights
already existing" may be applied retroactively, even to pending actions.  <u>Hansen-Snyder Co. v.</u>

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

-11-

General Motors Corp., 371 Mich. 480, 485, 124 N.W.2d 286 (1963).  Here, Plaintiffs hold no vested rights that are impaired by the amendments codified in PA 230, which simply clarifies the Legislature's original intent by making procedural changes to PA 10.  Moreover, to the extent PA 230 can be viewed as an attempt to cure a "defect" in PA 10, courts similarly have enforced such curative legislation retrospectively.  Stott v. Stott Realty Co., 288 Mich. 35, 45, 284 N.W. 635 (1939) (statutes "curing defects in acts done, or authorizing the exercise of powers, are valid where the legislature originally had the authority to confer the power or authorize the acts, except where it is attempted to impair vested rights"); City of Allegan v. Consumers' Power Co., 71 F.2d 477, 480 (6th Cir. 1934); Chemical Bank & Trust Co. v. Oakland County, 264 Mich. 673, 680, 251 N.W. 395 (1933).

Here, the Legislature clearly had the authority to include the amendatory language of PA 230 in PA 10.  Had the language originally been included in PA 10, Plaintiffs would have no argument whatsoever that PA 10 was local legislation.  The later inclusion of the amendatory language, whether the Court views it as curative or affirming original intent, is a valid action of the Legislature which, under Michigan law, should be given full effect by this Court.

### 3. PA 10's population classification is rationally related to its purpose.

Even if Article 4, § 29 applied to PA 10, Plaintiffs cannot refute the fact that the population classification included in the Act is rationally related to its purpose.  In fact, Plaintiffs fail to present any admissible evidence that the population classification is not rationally related to its purpose.  Instead, Plaintiffs try to frame the population classification as a right to vote issue.[6]

"Every reasonable presumption must be indulged in favor of an act's constitutionality." Ace Tex Corp. v. City of Detroit, 185 Mich. App. 609, 614, 463 N.W.2d 166 (1990) (citations omitted).  In addition, if the population classification has a reasonable relationship to the purpose of the statute, an act

---

[6] As set forth herein and in Defendants' Summary Judgment Briefs, Plaintiffs simply do not have the right to vote for school board members. Mixon v. Ohio, 193 F.3d 389, 403 (6th Cir. 1999).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

containing a population requirement can be sustained as a general act.  Dearborn v. Wayne Co. Bd. of Supervisors, 275 Mich. 151, 155, 157, 266 N.W. 394 (1936).

Michigan courts have recognized that including school districts, with different population levels face different challenges.  *See* Airport Comm'y Schls. v. State Bd. of Ed., 17 Mich. App. 574, 170 N.W.2d 193 )1969); *see also* Lucas v. Wayne Co. Bd. of Road Comm'rs, 131 Mich. App. 642, 348 N.W.2d 650, 653-54 (1984) *lv. den.* 418 Mich. 945 (1984); *see also* Ace Tex Corp. at 619; (*citing* Lucas at 652).  Similarly, in MacQueen, *supra,* the Michigan Supreme Court upheld legislation that granted certain school districts, based on their populations, the power to raise money.  The statute provided that: "Any school district within the state of Michigan, whose population shall exceed 15,000 and be less than 100,000, shall have power and authority to borrow money and issue bonds to an amount not greater than five per cent of the total assessed valuation of said district." *Id.* at 340.  The court upheld the provision as a general law, stating conclusively that  "[w]hatever diversity of views may have heretofore arisen, *it is now authoritatively settled in this state* that a general law is not unconstitutional because based upon classification of school districts according to population." *Id.* at 341 (emphasis added).

As recognized by the Seventh Circuit in Hearne, the difficulties faced by DPS, Michigan's largest school district are different than those faced by other districts because of the magnitude of its operation.  *See, e.g.,* Hearne v. Board of Educ. of City of Chicago, 185 F.3d 770, 775 (7th Cir. 1999) (legislature had rational basis for enacting statute altering collective bargaining rights of Chicago public school employees because of the scale of operations in Chicago compared to other school districts).  The magnitude of the effect of DPS' problems, *i.e.* an effect on ten percent (10%) of Michigan's students, makes DPS' problems distinct from any other district, including those districts which are experiencing problems with finances, student test scores and graduation rates.  In addition, the Legislature has a long history of treating first class school districts differently than other districts.[7]  Thus, there is a rational

---

[7] *See, e.g.,* M.C.L. §§ 380.11, 380.401, 380.401a, 380.404b, 380.411a, 380.416, 380.417a, 380.418a,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

relationship between the Legislature's purpose in enacting PA 10 – improving the educational opportunities of ten percent (10%) of Michigan's students – and PA 10's population classification.

### C.    PA 10 Is Within the Legislature's Power and Does Not Violate Article VII, § 22

Plaintiffs' argument under Article VII, § 22, that because the City of Detroit Charter does not give the Mayor the authority to appoint members of a school board, the Legislature is powerless to do so must be rejected.  First, PA 10 is not inconsistent with the Detroit Charter.  Second, even if it were, all charters of local municipalities are subordinate to the general laws enacted by the Legislature.

Plaintiffs have cited no provisions of the Detroit Charter which are allegedly in conflict with PA 10.  In fact, the Charter specifically acknowledges the supremacy of laws enacted by the Legislature:

> The city has the comprehensive home rule power conferred upon it by the Michigan Constitution, subject only to the limitations on the exercise of that power contained in the Constitution or this Charter *or imposed by statute.  The city also has all other powers which a city may possess under the Constitution and laws of this state.* Article 1, § 1-102.

*See also*, Detroit Charter, Art. 5, § 5-102 (specific powers of Executive Branch are subject to State law).  Public Act 10 merely supplements the executive authority of the Mayor under the Charter.

Even if there was a provision in the Charter inconsistent with PA 10, state law would prevail because Article VII, § 22 specifically subjects the charters of cities and villages to the general laws enacted by the Legislature.  Plaintiffs selectively quote a portion of Article VII, § 22, the full text reads:

> *Under general laws* the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing earlier charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village.  Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, *subject to the constitution and law.*  No enumeration of powers granted in this constitution shall limit or restrict the general grant of authority conferred by this section.

MICH. CONST. Art. 7, § 22 (emphasis added).  The emphasized language reveals a basic maxim of Michigan law:  **city charters are subordinate to the general laws of the State.**  *See* <u>Kalamazoo v.</u>

_____

380.422, 380.424, 380.431a, 380.432, 380.433, 380.434, 380.472, 380.485, 380.1131.

Titus, 208 Mich. 252, 265, 175 N.W. 480 (1919); Harsha v. City of Detroit, 261 Mich. 586, 591, 246

N.W. 849 (1933); City of Lansing v. Board of Canvassers, 380 Mich. 496, 157 N.W.2d 264 (1968).

IV.    PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF THE VOTING RIGHTS ACT.

    A.    Section 2 of the Voting Rights Act Does Not Apply to PA 10's Appointive Process.

Although Plaintiffs acknowledge that the Sixth Circuit's decision in Mixon v. Ohio applies to

their Equal Protection claim,[8] Plaintiffs ignore the application of Mixon to their claim under Section 2

of the Voting Rights Act.  Because Plaintiffs challenge an appointive, rather than an elective, process

under Section 2 of the Voting Rights Act, Plaintiffs cannot establish a claim under the Voting Rights

Act.  In Mixon v. Ohio, the Sixth Circuit held that Section 2 of the Voting Rights Act applies only to

elective, not appointive, processes of selecting state or local officials.  Mixon, supra; see also Chisom v.

Roemer, 501 U.S. 380, 111 S.Ct. 2354, 2367 (1991) (noting that state could avoid application of Voting

Rights Act by changing from an elective to an appointive system of selecting judges).  In fact, as noted

by the Mixon court, every other federal court that has addressed the issue of appointive processes has

held that Section 2 applies only to elective processes.  See Mixon, 193 F.3d at 407 (citations omitted).

Finally, as discussed herein and in Defendants' Summary Judgment Briefs, the Legislature had a

legitimate and compelling reason for enacting PA 10 – improving the educational opportunities of ten

percent (10%) of Michigan students.  See Wesley v. Collins, 791 F.2d 1255 (6th Cir. 1986) (state statute

disenfranchising convicted felons did not violate Voting Rights Act because of legitimate and

compelling reasons for statute).  Thus, Plaintiffs' Voting Rights Act claims must be dismissed.

    B.    Even if the Voting Rights Act Did Apply, Plaintiffs' Claim Must Fail Because PA 10
        Does Not Affect Minorities' Fundamental Right to Vote.

Even if this Court chose not to follow Mixon and attempted to apply Section 2 of the Voting

Rights Act, Plaintiffs' claim must fail because they have not and cannot point to any objective factors,

which demonstrate that minorities do not have equal access to the process of electing their

representatives. *See* Thornburg v. Gingles, 478 U.S. 30, 73, 106 S.Ct. 2752 (1986); Ortiz v. City of Philadelphia Office of the City Comm'ners Voting Registration Div., 28 F.3d 306 (3rd Cir. 1994).

Plaintiffs' blanket assertion that "Detroit lost the vote because it is poor and black" is irrelevant where intent is not relevant to a claim under Section 2 of the Voting Rights Act. Thornburg v. Gingles, 478 U.S. 30, 69, 71 (1986). Even if it was, Plaintiffs provide absolutely no support for their statement. Pl. Br., p. 24. All that Plaintiffs have alleged—and all that they can prove—is that PA 10 applies to a school district that is predominantly African-American. What Plaintiffs would have this Court overlook is that PA 10 has no application to, and no impact whatsoever on, the numerous other districts in the State that are predominantly or even marginally African-American. In addition, Plaintiffs simply do not have a fundamental right to elect members of the Detroit School Board.[9]

The United States Supreme Court and the Sixth Circuit have recognized that state legislatures need the freedom to develop strategies to improve education. *See* Sailors v. Board of Ed. Of the County of Kent, 387 U.S. 105, 87 S.Ct. 1549 (1967); Mixon. Public Act 10 is an effort by the Michigan Legislature to do just that: develop a plan to improve the educational opportunities of students in Michigan's largest school district.

## V.   PLAINTIFFS FIRST AMENDMENT CLAIM MUST FAIL.

### A.   Plaintiffs Do Not Have Standing to Raise A First Amendment Claim on Behalf of Marvis Cofield or the Old School Board.

---

[8] Defendants address Plaintiffs' Equal Protection claims in their Summary Judgment Briefs.
[9] On this point alone, whether there is a right to vote for school board members, the Ohio statute addressed by the Sixth Circuit in Mixon is distinguishable from the facts before this Court. The Ohio Constitution specifically gives Ohio citizens the right to vote, through local referenda, to determine the number of members and the organization of their district's board of education. Ohio Const., Art. VI, § 3; *see also* Malcolm-Smith v. Goff, No. CV-342589, 1999 Ohio App. Lexis 4915 (Nov. 1, 1999) *lv appeal granted* 88 Ohio St.3d 1447, 725 N.E.2d 286 (2000) (addressing the same school reform statute as in Mixon). (The Mixon court addressed only federal, not state, constitutional claims.) Furthermore, contrary to Plaintiff's assertions, the court in Goff, upheld the Ohio school reform statute and *affirmed* summary judgment in favor of defendants with one exception. The Goff court found that, because of Ohio's constitutional provision regarding school board referenda, a referendum regarding the appointed school board had to be held sooner than four years after the appointment of the reform board as provided in the statute. The court upheld the reform statute in all other respects.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Plaintiffs allege that Defendants retaliated against Marvis Cofield for the exercise of his First Amendment rights by eliminating his right to veto the Reform Board's appointment of a CEO through 1999 PA 23.[10] Marvis Cofield, however, is not before this Court. Plaintiffs now apparently also assert a First Amendment claim on behalf of the members of the Old Board because they are not eligible for appointment to the Reform Board under PA 10.[11] Like Marvis Cofield, however, no member of the Old Board is before this Court. Plaintiffs have not made any attempt to establish that they have standing to raise a claim on behalf of Mr. Cofield or the Old Board. In fact, Plaintiffs completely ignore the fact that they bear the burden of establishing that they have standing to bring this claim before the Court.

As set forth in Defendants' Summary Judgment Brief, Plaintiffs bear the burden of establishing standing. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992). Plaintiffs must show that the Michigan Legislature's choices "have been or will be made in such a manner as to produce causation and permit redressability of injury" to them. Lujan, 504 U.S. at 561.

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan, 504 U.S. at 560-61 (citations omitted). Plaintiffs make no attempt to satisfy these requirements.

Marvis Cofield is not before this Court. No member of the Old Board is before this Court. The Michigan Legislature is not before this Court. Plaintiffs have not alleged any facts in their Complaint or in their Motion for Summary Judgment specifying how they themselves have been injured by PA 10 or PA 23. Furthermore, Storer v. Brown, 415 U.S. 730 (1974), the one case Plaintiffs cite in their very brief discussion of standing, fails to support the proposition that they have standing in this matter. In

---

[10] Plaintiffs, however, make no mention of this claim (Count VII) in their Motion for Summary, other than indicating in their Conclusion that they seek Summary Judgment on Count VII.
[11] Plaintiffs' First Amendment claim (Count VII) is limited to a claim on behalf of Marvis Cofield.

fact, the opposite is true. In Storer, the U.S. Supreme Court examined California statutes requiring that (1) independent candidates for U.S. Congress, president and vice president offices had not been affiliated with a political party in the preceding year and (2) such candidates gather a certain number of signatures from registered California voters. The plaintiffs in Storer *had actually attempted to get on California's ballot as independent candidates* and were denied. Thus, unlike Plaintiffs in this action, the plaintiffs in Storer were directly affected by the statutes in question. Likewise, were Mr. Cofield or members of the Old Detroit School Board parties to this lawsuit, they may be able to establish standing before this Court. Absent a direct causal link between the enactment of PA 10 or PA 23 and some injury suffered by the Plaintiffs before this Court, Plaintiffs do not have standing to bring their First Amendment claim and, therefore, it should be dismissed. *See* Anthony v. Michigan, 35 F. Supp. 2d 989, 991 (fact that plaintiffs were registered voters of Detroit insufficient to show that they suffered a concrete and particularized injury due to merger of Recorders Court and Wayne County Circuit Court).

Furthermore, in their Motion, Plaintiffs attempt to rely on evidence that is not before this Court. *See* Pl. Br., p. 30 ("As the testimony *will* establish . . ."). Reliance on testimony not yet in evidence is inappropriate at the summary judgment stage – either in support of their Motion for Summary Judgment or in response to Defendants' Motion for Summary Judgment. *See* Celotex, *supra*.

**B.    Even if Plaintiffs Had Standing to Challenge PA 10 or PA 23 on Behalf of Cofield or Members of the Old Board, Their First Amendment Claim Must Fail.**

**1.    Legislature Has the Authority to Regulate School Boards.**

First, neither Plaintiffs nor Mr. Cofield have a fundamental right to maintain a certain set of duties and responsibilities for Mr. Cofield's term of office as a member of the Reform Board. Likewise, neither Plaintiffs nor the Old Board have a fundamental right to hold the offices to which they were elected. Plaintiffs make absolutely no attempt to address or distinguish the Michigan Supreme Court's holding in MacDonald v. DeWaele, 263 Mich. 233, 235, 248 N.W.2d 605 (1933), that a person elected

-18-

or appointed to a public office, holds the office subject to the will of the authority creating the office, in this case, the Michigan Legislature. *See also* Taylor v. Beckham, 178 U.S. 548, 576 (1900) ("public offices are mere agencies or trusts, and not property as such"); Lanza v. Wagner, 229 N.Y.S.2d 380, 385, 183 N.E.2d 670 (1962), *appeal dismissed*, 371 U.S. 74 (1962) ("Absent any express constitutional limitation, the Legislature has full and unquestionable power to abolish an office of its creation or to modify its term"); Warden v. Pataki, 35 F. Supp. 2d 354 (S.D.N.Y. 1999) (*quoting* Lanza). Clearly, if the Legislature has the power to abolish school board positions, they also have the power to regulate the powers and responsibilities of school board members.

The Michigan Revised School Code, M.C.L. 380.401, *et seq*, sets forth the terms of office and duties and powers of each and every school board in the State, including those of Mr. Cofield as a member of the Reform Board and, prior to the effective date of PA 10, those of the Old Board. Thus, as the body that enacted the Revised School Code, the Michigan Legislature has the authority to modify or abolish the term of office, duties and powers of school board members.

### 2. Legislature Had Legitimate Purpose for Enacting PA 10 and PA 23.

As discussed herein and in Defendants' Briefs in Support of Their Motions for Summary Judgment, the Michigan Legislature had a significant and legitimate purpose behind the enactment of PA 10 and PA 23: improving the educational opportunities of students in the largest district in the State of Michigan by enacting reform legislation to address low test scores, high drop out rates, mismanagement of school bond funds, lack of effective management at all levels of the school system, etc. This reform involved mandating fundamental structural changes in the governance of first class school districts in this state, including the removal of veto rights regarding the appointment of DPS CEO for mayoral appointments to the Reform Board. Plaintiff, however, ignores the U.S. Supreme Court's legitimate purpose test for reviewing legislation which arguably impairs constitutional rights:

-19-

> If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate purpose behind the regulation . . . such as the remedying of a broad and general social or economic problem. . . . the public purpose need not be addressed to an emergency or temporary situation. . . . The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests.

Energy Reserves v. Kansas Power & Light, 459 U.S. 400, 411-12 (1983). Michigan has a significant and legitimate public interest in legislatively restructuring the governance of struggling school districts through the enactment of PA 10 in order to reverse their continuing deterioration. Michigan also has a significant and legitimate public purpose in continuing to facilitate such reform by enacting statutes to further the purpose of PA 10. Public Act 23 removed barriers to the continuing reform efforts in DPS.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs' Motion for Partial Summary Judgment, grant their Motion for Summary Judgment and dismiss Plaintiffs' Complaint in it entirety with prejudice.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
George W. Bushnell (P11472)
Richard J. Seryak (P26152)
Jerome R. Watson (P27082)
Jennifer A. Walker (P58354)

By _Jerome R. Watson_
Jerome R. Watson
Attorneys for Defendants
150 W. Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420

Dated: September 21, 2000
DELIB:2182916.1\022715-00017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED